STATE OF VERMONT

ENVIRONMENTAL COURT

| | | |
|---|---|---|
| Secretary, | } | |
| Vermont Agency of Natural Resources, | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Docket No. 36-2-08 Vtec |
| | } | |
| Rodney White, | } | |
| Respondent. | } | |

Decision and Order on Motions for Sanctions

The Secretary of the Agency of Natural Resources and Respondent entered into an Assurance of Discontinuance (AOD) to resolve violations involving a failed wastewater system at Respondent's mobile home park, Green Mountain Mobile Manor, and the resulting discharge to waters of the state. The AOD was entered as a court order on February 26, 2008 (the 2008 AOD Court Order). See 10 V.S.A. § 8007 (stating that when the AOD is "signed by the environmental court, the assurance shall become a judicial order"); see also generally 10 V.S.A. Chapter 201 (governing "Administrative Environmental Law Enforcement"). On December 11, 2008, the Agency of Natural Resources (ANR) filed a petition for an order to show cause why Respondent should not be held in contempt for failing to comply with the 2008 AOD Court Order.

The Secretary is represented by John Zaikowski, Esq. Respondent was represented by Andrew Carter, Esq.[1] Intervenors Donald Bletz, Carol Bletz, and Bruce Van Guilder are represented by Sigismund Wysolmerski, Esq.

---

[1] Respondent was represented by Attorney Carter through a telephone hearing held on an audio-taped record on September 28, 2009, at the close of which Attorney Carter was granted leave to withdraw.

A contempt hearing was conducted by Judge Merideth Wright in person at the Rutland District Court, with an audio-taped record, on January 29, 2009, in the above-captioned case. At that hearing, Respondent Rodney White was found in contempt of the 2008 AOD Court Order that had been based upon the Assurance of Discontinuance agreed to by Respondent and the ANR. A Contempt Order was issued on January 30, 2009, requiring weekly inspections of the wastewater system at the mobile home park, reporting of the results of the inspections to the Regional Engineer, and immediate pumping and hauling of wastewater to an approved disposal facility in the event of surfacing sewage.

The Contempt Order scheduled a conference that was held by telephone, with an audio-taped record, on February 9, 2009, to consider whether Respondent would be installing a replacement wastewater system or connecting to a municipal system, to establish a schedule for the remedial work, and to consider sanctions if the work did not proceed on schedule. Further conferences to monitor Respondent's compliance were held on February 20, 2009, and February 23, 2009, resulting in a Revised Order of Contempt and Compliance Schedule issued on February 27, 2009 (the February 2009 Contempt Order).

That order provided:

1. Respondent has been adjudged in Contempt of this Court for failure to comply with the Court Order entered on February 26, 2008 on the basis of the parties' Assurance of Discontinuance. A coercive sanction of $50 per day is hereby imposed from the date on which this Order is served on Respondent to the date the sewer connection is placed in operation, to be purged upon timely completion of such connection pursuant to this Order.

2. Until the sewer connection is placed in operation, Respondent shall continue to have the disposal fields visually inspected twice weekly and the results reported by telephone to the ANR Regional Engineer. Within 24 hours of any event of surfacing sewage, Respondent shall have the system pumped and the effluent hauled to a disposal facility. A coercive sanction of $290 is hereby imposed for each instance of failure to comply with this paragraph. This

2

sanction is set at this amount because it represents the cost of a single pump-and-haul event; it is intended to remove any financial incentive for failing to perform the inspection, the reporting, or the pumping and hauling.

3. No later than seven (7) consecutive calendar days following the date of service of this Order, Respondent shall obtain estimates for all work needed to complete construction of the connection of the Green Mountain Mobile Manor wastewater to the Fair Haven Municipal Sewer System.

4. No later than ten (10) consecutive calendar days following the date of service of this Order, Respondent shall hire all contractors and order all materials needed to complete the connection of the Green Mountain Mobile Manor wastewater to the Fair Haven Municipal Sewer System.

5. No later than thirty (30) consecutive calendar days following the date of service of this Order, Respondent shall commence construction of the connection of the Green Mountain Mobile Manor wastewater to the Fair Haven Municipal Sewer System. No later than three (3) business days prior to commencement of construction activities, Respondent shall notify ANR Regional Engineer David Swift at ANR's Rutland Regional Office ((802) 786-5900), and shall inform the parties to this litigation, of the construction commencement date.

6. No later than forty-five (45) consecutive calendar days following the date of service of this Order, Respondent shall complete construction of the connection of the Green Mountain Mobile Manor wastewater to the Fair Haven Municipal Sewer System, in accordance with the approved permit issued by the ANR on October 16, 2008, and shall place the connection in use.

7. In the event any of the above deadlines is anticipated not to be met, no later than three (3) business days prior to such deadline Respondent shall so inform ANR Regional Engineer David Swift at ANR's Rutland Regional Office ((802) 786-5900), and shall inform the parties and the Court that he will be requesting an extension to such deadline through an amendment to this court order. The Court will promptly schedule a telephone hearing on any such amendment request; the parties shall discuss any such amendment request with each other prior to the Court hearing.

Respondent was served with the February 2009 Contempt Order on March 3, 2009, making Thursday, April 2, 2009, the thirtieth calendar day after service of the order, which was the date by which Respondent was to have commenced construction

3

under paragraph 5 of the February 2009 Contempt Order. At no time prior to April 3, 2009, did Respondent notify the ANR Regional Engineer that the April 2, 2009 construction commencement deadline was anticipated not to be met, nor did Respondent request an amendment to the schedule in the February 2009 Contempt Order, as required by paragraph 7 of that order.

On September 28, 2009, a telephone hearing and oral argument on the issue of sanctions was held, on an audio-taped record. Respondent stated that the delay in commencing construction was due to waiting for the concrete to cure on a specially ordered valve chamber, and that, as soon as it was ready, he had it picked up and taken to the site. However, Respondent did not explain why he did not order it in time to have the concrete cured within the thirty days. Nor did he explain why, when he became aware that it would not be ready in time, he did not notify the ANR Regional Engineer that the April 2, 2009 construction commencement deadline was anticipated not to be met, or why he did not request an amendment to the schedule in the February 2009 Contempt Order, as provided in paragraph 7 of that order.

On April 3, 2009, the Regional Engineer inspected the system, observing that construction had not commenced on the connection to the municipal sewer system, and that sewage had surfaced and was continuing to surface on the ground in the northeast and southwest areas of the system, although it was not discharging into state waters by overland flow. Based on those observations, on April 3, 2009, the ANR requested that a telephone conference be scheduled to address whether the deadlines imposed in the February 2009 Contempt Order were being met; the conference was scheduled for April 8, 2009.

On Saturday, April 4, 2009, on Sunday, April 5, 2009, and on Monday, April 6, 2009, Respondent had the system pumped, and the effluent trucked to the Fair Haven municipal wastewater treatment plant, at a cost of $190 for each of the two weekend days, and a cost of $110 for the weekday. However, Respondent did not report to the

4

ANR Regional Engineer that the system had been pumped. By April 6, 2009, Respondent had brought a small excavator to the site to be ready to do the required work, but had not broken ground for that work.

On April 6, 2009, the Regional Engineer again inspected the system, observing that construction had not commenced on the connection to the municipal sewer system, that the southwest area of the leach field was dry so that sewage was not surfacing, but that sewage was surfacing on the ground in the northeast area of the system, although it was not discharging into state waters by overland flow. The pumping and trucking that had been done on April 4, 5, and 6, 2009, was therefore insufficient to remove all of the wastewater produced by the system by the time of the April 6 inspection. As of that time only one of the four areas of the system's leach field was functioning; that area was not adequate to handle the wastewater produced by the mobile home park. Respondent had the system pumped again on April 7, 8, and 9, 2009. Construction on the connection to the municipal sewer system commenced on April 9, 2009, by breaking ground for the connection to the municipal system; the connection was put into operation on April 10, 2009.

During a telephone conference held on April 8, 2009, Respondent reported that he had been pumping and trucking the wastewater produced on the site, but that he had not notified the ANR Regional Engineer of that activity. He reported that the costs of the pumping and trucking were approximately $1000 per week. Respondent had not requested an amendment to the schedule in the February 2009 Contempt Order to give him more time to commence (or complete) construction. On April 8, 2009, the ANR also filed a motion for sanctions for violations of the February 2009 Contempt Order (the April Motion for Sanctions).

At the conclusion of the April 8, 2009 telephone conference, the Court instructed the Agency to confer with the other parties and to provide a proposed schedule for reporting pumping-and-hauling activities, to be included in a Supplemental Order. The

Court scheduled weekly telephone conferences to begin on April 13, 2009, in order to monitor Respondent's compliance until the work would be completed. In addition, the Court postponed setting a schedule for the parties to file memoranda regarding the April Motion for Sanctions until compliance would have been achieved, so that the parties and the Court would have final compliance dates and costs to use in determining appropriate sanctions, if any.

As reflected on invoices from Doran Brothers, Inc., Respondent commenced pumping and trucking wastewater on Saturday, April 4, 2009, and had the system pumped and trucked to the Fair Haven wastewater treatment plant on April 5, 6, 7, 8 and 9, 2009. Respondent paid $110 per day for the service, plus an additional $80 per day for an after-hours call out charge on both weekend days, April 4 and April 5, 2009, for a total of $820. The April 10, 2009 cover letter from Attorney Carter to the ANR Regional Engineer stated that the daily pumping and trucking would continue until the hookup with the municipal system would be completed. However, also on April 10, 2009, the system was hooked up to the municipal sewer system and began operating, for which Respondent paid an additional $330 for the rental and services of a crane truck and a pump truck, as reflected in the invoice attached to Attorney Carter's April 13, 2009 letter to the ANR Regional Engineer.[2]

At the April 13, 2009 conference, Attorney Carter, on behalf of Respondent, reported that the connection to the municipal sewer system had been hooked up and was working, but that the ditch still needed to be filled in and that two other elements of the system still required work: a manhole cover near the road that had to be lowered

---

[2] The letter refers to pumping as having continued through "Friday, April 9, 2009," with the hookup occurring on "Saturday, April 10, 2009." However, April 9, 2009, was a Thursday and April 10, 2009, was a Friday. Because the related Doran Brothers invoice for the April 10 work does not include an "after hours service call out" charge, as was charged for the previous weekend days, the Court concludes that the connection was actually made on Friday, April 10, 2009.

6

in elevation, and a valve chamber that possibly needed to be lowered in elevation below frost level. The Court required the ANR and Respondent to report to the Court by letter as to when the work would be completed, after which the Court intended to set a time for briefing or argument of the April Motion for Sanctions.

As described by Respondent on the record of the September 28, 2009 telephone hearing, as of an April 17, 2009 site visit, the pipes had been installed and the system had been charged so that effluent was being pumped to the municipal wastewater treatment system, but Respondent had questioned whether the pipes had been installed at a sufficient depth to protect them from freezing. During the April 17, 2009 site visit, Respondent's plumbing contractor suggested that lowering the valve chamber would remedy the problem. Respondent's engineer and the ANR Regional Engineer agreed, and the consequent changes to the valve chamber piping were the subject of a stipulated schedule entered as a court order on June 1, 2009.

By letter from Attorney Carter to the Court, filed on April 22, 2009, Respondent requested an extension to May 1 to "resolve the remaining issues to obtain final certification of [the] sewer hookup," stating that the system had been fully operational "for over a week," and that neither the ANR nor intervenors objected to the extension. The Court granted the extension, and on May 1, 2009, granted the parties additional time to file the amended agreed schedule.

The parties filed a Stipulated Scheduling and Compliance Order which was signed as a court order on June 1, 2009 (the June 2009 Stipulated Court Order). The June 2009 Stipulated Court Order set a schedule for the filing of memoranda on the April Motion for Sanctions, and called for a certification of completion of the remaining work on the modifications to the valve chamber piping to be filed by Respondent on August 1, 2009. In the June 2009 Stipulated Court Order, the parties agreed that Respondent had already completed the physical connection to the municipal sewer system, but that the modifications to the valve chamber piping still had to be completed

7

in order for the system to comply with its ANR-approved wastewater permit (#WW-1-1818). The parties also agreed that Respondent had previously submitted receipts documenting the disposal of effluent by pumping and trucking to an approved wastewater disposal facility. The stipulation stated that, as of May 15, 2009, Respondent had submitted certifications of completion of the site remediation and the effluent filter installation, and had submitted the volume determinations required by a condition of the ANR wastewater permit. The stipulation also stated that Respondent's engineer had submitted the final engineering drawings and certification, including a notation that "the valve chamber piping modifications shall be completed by August 1, 2009." The stipulation stated that the sole remaining issue for project completion was the work on the valve chamber piping modifications.

The certification of completion of the valve chamber piping modifications was not filed by August 1, 2009, and on September 8, 2009, the ANR again requested a telephone conference to discuss the lack of that document; the conference was scheduled for September 21, 2009. At the September 21, 2009 telephone conference, the ANR reported that it had received electronic communications from Respondent's engineer that the work was complete, and that the ANR Regional Engineer expected to receive the necessary documentation that day. The Court allowed the parties to file any supplemental memoranda regarding the appropriate sanctions, and scheduled oral argument on any pending motions for sanctions for September 28, 2009.

On September 24, 2009, the Secretary filed a second motion for sanctions (the September Motion for Sanctions), addressing Respondent's failure to comply with the June 2009 Stipulated Court Order. The Court heard both motions for sanctions at the September 28, 2009 telephone hearing, on an audio-taped record.

8

<u>Sanctions for Failure to Timely Comply with the February 2009 Contempt Order</u>

The April Motion for Sanctions requested the Court to impose money penalties under several paragraphs of the February 2009 Contempt Order. The ANR seeks sanctions under paragraph 2 of the February 2009 Contempt Order in the amount of $580, calculated as one payment of $290 for the surfacing sewage observed on April 3, 2009, and another payment of $290 for the surfacing sewage observed on April 6, 2009. The ANR seeks sanctions in the amount of $150, calculated as $50 per day, for Respondent's failure to notify the ANR Regional Engineer three days in advance of the commencement of construction that the deadline would not be met. The ANR seeks sanctions in the amount of $1500, calculated as $50 per day, for Respondent's failure to commence construction during the allotted thirty-day period, as well as a penalty of $100 per day for each day during which Respondent failed to commence construction of the sewer connection after the required commencement date of April 2, 2009.

As a matter of fairness and respect for the many people in Vermont who comply with the State's environmental laws and regulations, as well as the many respondents who enter into and comply with consent orders (assurances of discontinuance) under 10 V.S.A. § 8007, it is necessary to impose sanctions on those who agree to come into compliance and then do not do so. See 10 V.S.A. § 8001 (purposes of Uniform Environmental Enforcement Act include to "prevent the unfair economic advantage obtained by persons who operate in violation of environmental laws" and to "provide for more even-handed enforcement of environmental laws," as well as to "foster greater compliance with" and to "deter repeated violation of environmental laws," and to "enhance the protection of environmental and human health").

The $820 Respondent expended to pump and haul sewage until the connection to the municipal system was installed, as well as the $330 Respondent expended during the installation, should not be set off against any sanctions that are appropriate for his failure to comply with the February 2009 Contempt Order (or to seek an extension of

any of the deadlines in that order). Those expenditures would not have been necessary at all if Respondent had complied with the original 2008 AOD Court Order in the first place.

Paragraph 2 of the February 2009 Contempt Order imposed a prospective coercive sanction of $290 for each time Respondent failed to pump and haul within 24 hours of each event of surfacing sewage. The order stated that the sanction was "intended to remove any financial incentive for failing to perform the inspection, the reporting, or the pumping and hauling." Accordingly, a sanction in the amount of $290 is due for the surfacing sewage observed by the ANR Regional Engineer on April 3, 2009, that had accumulated by that date.[3] Although the pumping done on April 6, 2009, was not sufficient to clear up all the surfacing sewage on that day, as the pumping was done again within 24 hours, no additional sanction is appropriate for the surfacing sewage observed on April 6, 2009.

Paragraph 5 of the February 2009 Contempt Order required Respondent to notify the Regional Engineer three business days in advance of commencement of construction, which was required to occur by April 2, 2009. Paragraph 7 of the February 2009 Contempt Order required Respondent to notify the Regional Engineer three business days in advance of any deadline that would not be met and to request an extension of any deadline through an amendment to the court order. Respondent failed to notify the ANR Regional Engineer under either paragraph, and failed to request the Court to extend that deadline. The fact that Respondent was waiting for the specially ordered concrete casting does not excuse his failure to notify the Regional Engineer, the parties, and the Court in advance that the deadline would not be met. A sanction in the

---

[3] Respondent did not show that no sewage had surfaced before that observation, or that the pumping on April 4, 2009 was done within 24 hours of the time at which the sewage had first begun to surface.

10

amount of $150, calculated as $50 per day, is appropriate for this failure to comply with these sections of the February Court Order.

Finally, paragraph 1 of the February 2009 Contempt Order imposed a prospective purgeable coercive sanction of $50 per day from the date of service of the Order on Respondent, which occurred on March 3, 2009, to the date on which the sewer connection was actually placed in operation, which occurred 38 days later on April 10, 2009. Paragraph 1 provided that the penalty would be purged upon "timely completion" of the connection pursuant to the February 2009 Contempt Order, that is, thirty days after service, or April 2, 2009, as required by paragraph 5. As the completion of the connection was not timely under the order, and Respondent did not apply to the Court for an amendment of this deadline, this coercive sanction of $1900 became final and was not purged.

Accordingly, the monetary sanction imposed on Respondent for his failure to timely comply with the February 2009 Contempt Order is a total of $2340.[4]

Sanctions for Failure to Timely Comply with the June 2009 Stipulated Order

In the September Motion for Sanctions, the ANR seeks sanctions under paragraph D of the June 2009 Stipulated Contempt Order in the amount of $2500, calculated as $50 per day from the August 1, 2009 date for completing modifications to

---

[4] This amount is also reasonable in the context of several of the factors the Court must consider when imposing a penalty in a contested administrative order case, rather than one in which the respondent entered into a settlement order and subsequently failed to comply with it. The amount of $2340 is adequate for deterrence, given the additional costs Respondent incurred for doing the work necessary for compliance. In the present case, the surfacing sewage represented at least a high degree of potential harm to human health and the environment; Respondent knew or had reason to know the violation existed; and Respondent received the economic benefit of avoiding the costs of compliance for at least a year (from the 2008 AOD Court Order to the actual date of connecting to the sewer system on April 10, 2009). See 10 V.S.A. § 8010(b), (c).

11

the valve chamber piping and submitting the certification of completion, to the date the conditional certification was actually issued by Respondent's engineer on September 21, 2009.

Unlike the February 2009 Contempt Order, the June 2009 Stipulated Contempt Order did not contain any coercive or prospective sanction. As the sewer connection was operating during this time period, all of the issues in the original 2008 AOD Court Order, in the January 2009 Contempt Order, and in the February 2009 Contempt Order had been addressed. As of the September 28, 2009 oral argument, any prospective issues regarding the modifications to the valve chamber piping had become moot, as the piping was completed and filled, and all that remained was to grade, seed, and mulch the soil surface.

Respondent's engineer and plumbing contractor worked actively with the ANR Regional Engineer during August and September of 2009 to address changes in the design for the valve chamber piping. No additional contempt sanctions related to the violations that are the subject of this case are warranted due to the delay in obtaining the certification of the valve chamber piping modifications.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Respondent shall pay $2340 in sanctions for contempt, concluding this case.

Done at Berlin, Vermont, this 16th day of February, 2010.

_____
       Merideth Wright
       Environmental Judge